EJD:AP
F. #2023R00634

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

WILBER POLANCO and
▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - X

TO BE FILED UNDER SEAL

AFFIDAVIT AND COMPLAINT IN SUPPORT OF AN APPLICATION FOR ARREST WARRANTS

(18 U.S.C. § 924(c)(1)(A)(i))

25-MJ-215

EASTERN DISTRICT OF NEW YORK, SS:

STEVEN SCHILIRO, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

Upon information and belief, on or about June 18, 2025, within the Eastern District of New York, the defendants WILBER POLANCO and ▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬ together with others, did knowingly and intentionally use and carry a firearm during and in relation to a drug trafficking crime, to wit: a violation of Title 21 U.S.C. § 841(a)(1), and did knowingly and intentionally possess said firearm in furtherance of such drug trafficking crime.

(Title 18, United States Code, Section 924(c)(1)(A)(i))

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent with the Federal Bureau of Investigation and have been since 2009. I am currently assigned to the C-30 squad, where I participate in the investigations of violent crime, narcotics trafficking, firearms possession and other related offenses. I am familiar with the facts and circumstances set forth below from my personal involvement in the investigation, my review of the investigative file, including video surveillance and physical property, and reports of other law enforcement personnel involved in the investigation. Where I describe the statement of others, I do so only in sum and substance and in part.

2. On June 18, 2025, at approximately 2:01 a.m., police officers with the New York City Police Department ("NYPD") responded to a report of shots fired in the vicinity of a residence located at 18 Autumn Avenue in Brooklyn, New York (the "Autumn Avenue Residence"). A construction barrier partially blocked the Autumn Avenue Residence from the roadway. Law enforcement agents recovered surveillance video from 21 Autumn Avenue. That video captured a shooting near that location that took place at approximately 1:58 a.m., which I have reviewed.

3. I have further reviewed video surveillance recovered from 3397 Fulton Street in Brooklyn, New York, which is approximately three blocks from the location of the shooting outside of the Autum Avenue Residence. This video captures a silver Toyota Highlander (the "POLANCO Vehicle") that was involved in the shooting approximately one to

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

two minutes prior to the shooting. Based on my review of the video surveillance from 3397 Fulton Street, I observed a male, later identified as the defendant ████████████ ██████████ ██████ as set forth in greater detail below, walk to the POLANCO Vehicle at approximately 1:56 a.m., which was parked in the vicinity of 3397 Fulton Street. ████████████ ██████████ approached the driver's side of the Polanco Vehicle. ████████████ ████████ and a second male, later identified as the defendant WILBER POLANCO, as set forth in greater detail below, then walked from the driver's side of the POLANCO Vehicle to the sidewalk. ████████████ ██████████ walked off-camera and POLANCO stood on the sidewalk, appearing to wait for ████████ ████████ for approximately 20 seconds. ████████ ████████ then returned into camera view carrying a backpack, at which point ████████ ████████ and POLANCO walked back to the POLANCO Vehicle. ████████ ████████ entered the vehicle through the rear driver's side door and POLANCO entered the driver's seat and drove away at approximately 1:57 a.m.

    4.    Based on my review of the video surveillance from 21 Autumn Avenue, at approximately 1:58 a.m.[2], I observed two vehicles, a dark colored four-door sedan (the "Sedan") and the POLANCO Vehicle driving on Autumn Avenue towards Jamaica Avenue in Brooklyn and come to a stop next to one another near the Autumn Avenue Residence next to the construction barrier.

    5.    As set forth in greater detail below, defendant POLANCO, got out of the driver's seat of the POLANCO Vehicle and pointed what appeared to be a firearm in his right

---

[2] I am informed by another member of law enforcement that the timestamp on the video surveillance recovered from 21 Autumn Avenue was approximately 4 minutes slow and I have adjusted it herein to reflect the approximate real time.

hand towards the driver's side of the Sedan.    POLANCO was wearing a short-sleeved shirt with a white logo on the front left-side of the shirt and a large white logo on the back of the shirt.

6.    Defendant WILBER POLANCO then approached the driver's side of the Sedan and, within seconds, I observed what I believe to be multiple muzzle flashes originating inside the Sedan.   I then observed POLANCO run behind the Sedan as he grabbed the left side of his torso.   Based on that physical reaction, I believe that POLANCO was shot by an occupant of the Sedan.   I then observed POLANCO appear to fire multiple gunshots, based on visible muzzle flash from the direction of his extended arm, from the middle of the road towards the Sedan as the Sedan fled the location.

7.    After the shooting, I observed defendant ▮▮▮▮▮▮ ▮▮▮▮▮▮ get out of the POLANCO Vehicle and run towards defendant POLANCO where POLANCO appeared to hand ▮▮▮▮▮▮ ▮▮▮▮▮▮ a firearm.   I then observed POLANCO enter the driver's side of the POLANCO Vehicle and, from within the POLANCO Vehicle, move to the front passenger seat.   ▮▮▮▮▮▮ ▮▮▮▮▮▮ did not enter the POLANCO Vehicle and instead went towards the construction barrier along the driver's side of the POLANCO Vehicle.

8.    Moments later, I observed defendant ▮▮▮▮▮▮ ▮▮▮▮▮▮ jump over a fence on top of the construction barrier in front of the Autumn Avenue Residence, and then run back towards the driver's side of the POLANCO Vehicle, whereupon I observed the POLANCO Vehicle drive away.   A photograph of the Autumn Avenue Residence, the fence jumped by defendant ▮▮▮▮▮▮ ▮▮▮▮▮▮ and the construction barrier is below.

5



9. Police officers with the NYPD recovered a 9mm semi-automatic Springfield Armory handgun (the "Firearm"), an ejected black magazine with one visible live round in it and a loose live round on the ground inside the front yard of the Autumn Avenue Residence, in the vicinity of the area that I observed defendant ▮▮▮▮▮▮ ▮▮▮▮▮▮ after defendant POLANCO handed him the firearm. They also recovered two discharged 9mm Luger caliber cartridge casings—one Blazer and one Tulammo—from the roadway opposite the Autumn Avenue Residence consistent with where I observed POLANCO discharge his firearm on surveillance video. Law enforcement agents also observed a blood trail in the middle of the roadway in the vicinity of the discharged casings.

10. I am also informed by members of law enforcement at Woodhull Hospital that at approximately 2:15 a.m., they observed the occupants of a silver SUV (i.e., the POLANCO Vehicle) dropping off a male individual who appeared to be shot. As a result, members of law enforcement stopped the POLANCO Vehicle.

11. I am informed by a law enforcement report documenting information provided by medical personnel with Woodhull Hospital that shortly after 2:15 a.m., defendant POLANCO was admitted to treat at least one gunshot wound to his torso.

12. I am informed by members of law enforcement who observed defendant POLANCO at the hospital that he was wearing a short-sleeved shirt with a white logo on the front left-side of the shirt and a large white logo on the back of the shirt with the letters "OTF."

13. Based on all of the foregoing, I believe that the individual who was shot and admitted to Woodhull Hospital for treatment, and who was observed on video surveillance wearing the distinctive short-sleeve shirt described above at the shooting scene, is the defendant WILBER POLANCO.

14. Further, I believe that the individual who took the firearm from POLANCO after POLANCO fired it at the Sedan and drove POLANCO to Woodhull Hospital is ▇▇▇▇ ▇▇▇▇ because when officers spoke to him at Woodhull Hospital he identified himself as ▇▇▇▇ ▇▇▇▇ and stated in sum and substance that, prior to the incident outside of the Autumn Avenue Residence, POLANCO picked ▇▇▇▇ ▇▇▇▇ and others up in POLANCO's girlfriend's car. ▇▇▇▇ ▇▇▇▇ further stated in sum and substance that a short time later POLANCO got into a dispute with the driver of another vehicle and exited the POLANCO Vehicle. ▇▇▇▇ ▇▇▇▇ further stated in sum and substance that he heard gunshots, saw the other vehicle speed away and saw that POLANCO was shot, at which time ▇▇▇▇ ▇▇▇▇ helped POLANCO into the car and drove him to the hospital. Based on this, as well as my observations of the video surveillance of the incident compared to body worn camera that captures ▇▇▇▇ ▇▇▇▇ at Woodhull Hospital after POLANCO is brought there, I believe that ▇▇▇▇

███████ is the individual who carried the backpack into the POLANCO Vehicle at approximately 1:57 a.m. and took the firearm from POLANCO at approximately 1:58 a.m. after POLANCO fired it at the Sedan.

15.     On about June 18, 2025 into July 19, 2025, members of law enforcement executed a judicially authorized search warrant on the POLANCO Vehicle.  See 25-MC-2543.  Upon searching the POLANCO Vehicle, law enforcement recovered a backpack from the front passenger seat, which contained, among other items, one cell phone, approximately 1,499 vials of a substance that appears to be crack cocaine, one large twist of a substance that appears to be crack cocaine, one large ziplock bag of a substance that appears to be heroin, one plastic bag containing approximately 125 pills that appear to be MDMA, a baggie containing a quantity of what appears to be marijuana and approximately $1,393.[3]  Based on my review of the video surveillance from 3397 Fulton Street and the property recovered during the execution of the search warrant on the POLANCO Vehicle, I believe that the backpack seen on ███████ ███████ as he and POLANCO returned to the POLANCO Vehicle at approximately 1:56 a.m.

---

[3]     After defendant POLANCO was dropped off at Woodhull Hospital, New York City Police Department officers stopped the POLANCO Vehicle in the emergency room drop off area to interview the passengers about the incident.  Defendant ███████████████ was driving the vehicle and the vehicle contained three additional passengers ("Passenger-1," Passenger-2," and "Passenger-3").  I have reviewed portions of body worn camera footage capturing interviews with Passenger-1 and Passenger-2, which were conducted in Spanish and have been translated for me.  Passenger-1 indicated that he/she had personal property in the backpack that was in the front passenger seat and was provided with the items that he/she identified as belonging to him/her. A member of law enforcement inquired whether the backpack belonged to Passenger-1's friend and pointed toward the hospital where POLANCO was being treated for his injuries, and Passenger-1 stated that the bag belonged to her friend.  Based on the context of this conversation that I have reviewed on body worn camera and the officer's gesture toward Woodhull Hospital, I understand Passenger-1's statement to mean that the backpack belongs to POLANCO.  Passenger-2 indicated that he/she had clothing in the backpack, but was not permitted to retrieve the clothing.   Law enforcement observed clothing inside the backpack, along with the above-described items.

on June 18, 2025 just before the shooting, is the same backpack found in the POLANCO Vehicle from which the narcotics were recovered.

16. During the search of the POLANCO Vehicle, law enforcement also recovered one zip lock bag containing hundreds of empty plastic vials that I know from my training and experience are used to package crack cocaine from the front passenger door console.

17. Members of law enforcement also recovered what appeared to be two paystubs from inside the center console of the POLANCO Vehicle. The employer identified on the paystub was Sherwood Winding Holdings, LLC and the employee on the paystub was listed as "Polanco Valerio, Wilber X." One of the paystubs was dated May 30, 2025.

18. I am informed by members of law enforcement that, based on a subsequent microscopic analysis of the two discharged cartridge casings recovered from the shooting scene against test fires from the Firearm, the two discharged casings were fired from the Firearm.

19. I have also examined reports and photos of the Firearm and the discharged shell casings recovered from the shooting scene and, based on my training and experience in investigating firearms-related offenses, I believe that the firearm and the ammunition were manufactured outside the State of New York.

20. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and arrest warrant, as disclosure would give the defendants WILBER POLANCO and ███████████████████████ an opportunity to change patterns of behavior and flee from or evade prosecution and therefore have a significant and negative impact on the continuing investigation that may severely jeopardize its effectiveness, except that the

undersigned will distribute copies of this charging document and any resulting arrest warrants to other law enforcement authorities as necessary to effectuate the defendants' arrests.

WHEREFORE, your deponent respectfully requests that arrest warrants be issued so the defendants WILBER POLANCO and ███████████████, be dealt with according to law.

STEVEN SCHILIRO
Special Agent
Federal Bureau of Investigation

Sworn to before me this by telephone
20 day of June, 2025

*Marcia M. Henry*
THE HONORABLE MARCIA M. HENRY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK